Tilghman C. J.
At the instance of Samuel Story, a rule was laid on the commissioners of the county of Philadelphia, to show cause, why a mandamus should not issue commanding them to appoint either Anthony Fannen, or the said Samitel Story, collector of the taxes in Chesnut ward, in the city of Philadelphia. Cause has been shown, and the case *383 stands as follows : Either on the day of appeal or the day before,, the assessor of Chesnut ward returned to the commissioners the said Fannen and Story, in order that one of them might be appointed collector, in pursuance of an 44 Act to 44 raise and collect county rates and levies,” passed the 11th April, 1799. Fannen resided in Chesnut ward, and had a freehold in the city, but not in that ward; Story resided in the ward, and had a freehold there. By the 10th section of the act, it is 44 the duty of each assessor, on or before the day 44 of appeal in each year, to return two reputable citizens, 44 -who shall be freeholders of his ward, to the commissioners, 44 whose duty it shall be to appoint one of them to be the col-44 lector; and if any person shall be appointed collector as 44 aforesaid, and refuse to serve, he shall forfeit and pay a 44 fine of twenty dollars, and another person shall be appoint-44 ed in his stead.” The commissioners conceiving that the return of the assessor was not agreeable to law, inasmuch as Fannen had no freehold in Chesnut ward, proceeded to the appointment of Liberty Browne, and a rule has been laid on Browne, at the instance also of Story, to show cause why a information in nature of a writ of quo warranto, should not be filed against him, to try by what authority he exercises, or claims the right of exercising, the office of collector of - taxes of Chesnut ward. It appears, that Browne resides in Chesnut ward, and has a freehold in the city, but not in that ward. As both cases depend on the same act of assembly, they may both be considered together. As to the mandamus the matter lies in a very small compass. We have only to ascertain the meaning of the words, 44 two reputable citizens; free-44 holders of the ward.” It is not always that, by grammatical criticism we hit the meaning of an act of assembly, or any other writing. The easiest and most popular construction is generally the truest. Upon the first reading of this act it struck me, that the persons to be returned, were to be resident in the ward having freeholds there ; and after all the ingenious arguments which have been urged (and they were many), the first impression has not been erased. The words will well bear this construction, and there are reasons for supposing, that the legislature took them in that sense. As to residence, citizens residing in the ward would be most likely to be acquainted, both with the persons and property in the ward. It is probable too, that they would be most *384 .agreeable to the people of the ward; and as the payment of taxes, is at best but an unpalatable business, it is prudent to sweeten it with as many agreeable circumstances as possible. Then as to freehold. The word freeholders immediately precedes the words, of the ward; of course the latter ex-presajons naturally, as well as critically, ought to have some reference to the former, so that to disjoin them, and make the words of the ward skip over the word freeholders, and attach themselves exclusively to the more distent, two reputable citizens, is to make a forced construction for no good purpose. For certainly, persons having a freehold in the ward, will cmteris paribus have most weight and respectability there. But that is the smallest consideration: As no security is required of the collector, the freehold must have been intended to serve in some measure for security, and unless the words we are considering, call for a freehold in the ward, it may be any where within the limits of the commonwealth, for there is no other part of the law which limits the situation. So inconvenient a construction ought not to be resorted to, unless the intention was plain. A freehold in the remote part of the state, would afford little security, even if it were bound for the balance due from the collector, which at all events it would not be, until the commissioners sent a transcript of the balance to the prothonotary of the county where the land lay. Whether it would be bound, even then, is doubtful; but I give no opinion. Anthony Fannen having no freehold in Chesnut ward, was not such a person as the law describes, consequently the assessor did not comply with the law, when he returned Fannen and Story, and the commissioners not having two lawful persons submitted to them, were not bound to appoint either. I am therefore of opinion, that sufficient cause has been shown, and the rule should be discharged.
Then, as to the quo warranto. We are to consider, 1st. Whether the commissioners had a power to appoint a collector in the case that exists. 2d. Whether they have appointed a proper person. The power of appointing depends upon the same 10th section, for if it is not there, we shall find it no where. There is but one case expressly mentioned, in which an appointment may be made without a previous nomination by the-assessor, and that is, where the person who has been, appointed, refuses the office. But the act calls for *385 the most liberal construction as to the power of appointment, when it is considered, that if there is. no appointment, the.collection of the whole year’s taxes must be suspended. It is certain, that no such situation could have been contemplated by the legislature. It must have been intended, that there should be a collector always in existence. I do. not think then, it will be going toó far to say, that the same persons who are vested with the power of appointment in case of a refusal to act, are also vested with it, in case the assessor fails to perform his duty, of returning two persons lawfully qualified.
2d. But supposing the commissioners have power to appoint, is the person to be appointed to have the same qualifications, which are required by the act for those to be returned by the assessor ? Most undoubtedly the same qualifications are necessary. When the act says, that another person shall be appointed, it must be understood with reference to the first part of the sentence, in which the qualifications are mentioned ; for the whole is but one sentence; and it is inconceivable, that because the first person refused, the whole principle of qualification, should be relinquished in the second appointment. Mr. Browne then could not be lawfully appointed, because he was not lawfully qualified. But it is objected, that this is not a proper case for an information in the nature of a quo -warranto. Although a criminal proceeding in form, it is in substance but a civil one, and therefore clear of the prohibition in the 10th section of the 9th article of the constitution of the commonwealth, which relates to criminal proceedings only. I had doubts at first, whether inasmuch, as Story, the relator in this case, has no right to the office of collector, it would be proper to file an information at his instance. But upon reflection I am satisfied, that every citizen paying taxes in Chesnut ward, has an interest in this business, and consequently a right to institute an inquiry by what authority the collector exercises his office. I am therefore of opinion, that the rule for this information should be made absolute. There was another objection to the appointment of Liberty Browne, concerning which it may be proper to express an opinion. It has been suggested, that he was in arrears for collections of the former year, and had given no security for the payment of those arrears. Without inquiry into the fact, I will only say, that if such is the case, *386 he could not be appointed. As to'that the 1st section of the act is clear and positive.
Yeates T.
I have been too much indisposed to redüce to . . . . , r , , . writing my opinion on the arguments or counsel upon this motjon. Indeed, I was not present at part of them. Let it suffice then to say, that I take the meaning of the 10th section of the “ Act to raise and collect county rates and levies,” passed on the 11th April, 1799,' to be, that it is the duty of each assessor, to return two reputable citizens, having their freeholds in his ward or township, and actually resident therer in, to the commissioners, whose duty it shall be to appoint one of them to be collector; and that in all cases of appointments by the commissioners, of collectors, a conformity should be had to these qualifications of freeholds and residence.
The rule as to granting a mandamus, should be discharged, but leave be given to file an information in the nature of a quo -warranto. t
Bk.ackenp.idge J. concurred.
Rule for the mandamus discharged.
Rule for the information in the nature of a quo warranto, made absolute.