## THE STATE *against* CAREY A. HARRIS.

### *On Quo Warranto.*

The law imposes on the defendant, in a case of *quo warranto*, the burden of showing such grant or authority as invests him with the legal right to the franchise in question, unless he disclaims.

No person can become President of the Real Estate Bank, unless he be a member of the Directory of the Principal Bank, and of the Central Board; nor a member of the Central Board, unless he is a Director or President of one of the Boards of the Bank; nor such Director or President, unless he is a stockholder; nor a stockholder, (during the first four years of the charter,) unless he is a citizen of this State, owning real estate in this State, except in the case of partners, where one of the partners is a citizen, and owns not less than one-third of the land mortgaged to secure the stock.

Where a person, therefore, is called on by *quo warranto* to show by what right he exercises the franchise of President of the Bank, he is bound to show, in order to establish a valid legal title to the franchise, the acceptance of the charter by the corporators; that he is a citizen of the State; that he is the owner of real estate situate in the State; that he is legally a holder of capital stock in the Bank; that he is one of the Directory of the Principal Bank; that he is a member of the Central Board: and that he is President of the Central Board.

As to citizenship, a simple averment is sufficient. But to show that he is the owner of real estate, he must describe the real estate, show that it is in this State, and how he derives title to it, exhibiting the grants, patents, deeds, records, &c., by which it is acquired.

To show that he is a stockholder, he must show that there was a legally constituted Board of Managers, as provided by the charter; that such Board received, from the superintendents named in the charter, the subscription books, title papers, and documents, and made out a schedule, as directed by the charter; that 11,250 shares of stock appeared to the Managers to have been subscribed for, and the mortgages intended to secure them perfected to their satisfaction, and that the Managers thereupon awarded to him, or the person from whom he derives title to his stock, a certain amount of stock.

If not an original subscriber, he must further show how he has acquired title to the stock so awarded, and exhibit the title-deeds or records by which he derives title, or show some legal excuse for not producing them.

If he claims to have been elected a Director of the Principal Bank by the stockholders, he must exhibit so much of the ordinances and acts of the Central Board, appointing the time and place of holding such election, and every other ordinance relating to such election, as is necessary to show that the election was legally held; and the notice given of such election; and show, by proper averments, that it was held agreeably to law and the ordinances and regulations of the Central Board; and that he received a majority of the legal votes given, and was legally qualified and inducted into office.

If the election was by the Directors, to supply a vacancy, he must show that there was, at the time of election, a Board of Directors competent to elect; of which the place of a member had become and was vacant at the time of his election, either by death, resignation, absence from the United States, non-acceptance, refusal to qualify, or removal from office; and, in the latter case, the order, resolution, or sentence by which he was removed; his election to fill such vacancy, and his qualification and induction into office.

If he claimed by virtue of an appointment by the Governor, he must show the appointment; and if it was made to supply a vacancy, show how the vacancy arose.

He must also show that there was a Board of Directors for the Principal Bank, competent to transact business, and that he was elected by such Board a member of the Central Board. He must then show that there was a Central Board, legally constituted, and acting as such, and that he was, by the Central Board, elected President of the Central Board.

All these facts must be pleaded in legal form, and with reasonable certainty.

The Board of Managers possessed a special authority only, particularly defined, and expressly limited; and, therefore, any person claiming a right which could only be acquired through or by their acts or proceedings, must show that the matter was within their cognizance, and that they acted in pursuance of the authority with which they were clothed.

The Board of Managers, when legally constituted and organized, possessed the exclusive right of determining, in the first instance, upon the sufficiency of the security offered by the subscribers for stock, and the amount of stock each had secured and was entitled to.

Consequently, their decision is to be held as determining, *prima facie*, the sufficiency of the security, and the right of each subscriber to the stock awarded him, as well as the amount rightfully held.

And such subscribers as were finally determined by the Board of Managers to be entitled to stock, became *ipso facto* stockholders.

It is therefore sufficient for the original stockholder to show his citizenship, ownership of real estate, the appointment and organization of the Board of Managers, his subscription for stock within the time limited by the charter, and that the Managers received the subscription books, &c., and made a schedule, and determined that he was entitled to a certain amount of stock.

If he has been divested of his stock, the State must show it by replication.

And in order to show his right to the office of President, he need not show that the several members of the different Boards, by election by which he derives title, were either citizens of the State, or stockholders, or Directors *de jure*, but only that in each instance there was a Board, acting under color of a legal right, and in every respect legally competent to make the election.

If there was any incapacity, disqualification, or want of qualification in the Boards, the State must show it.

The law presumes those who act in such capacities, under color of right, as possessed of every requisite qualification, and that their acts are authorized and valid, until the contrary appears.

It is also necessary, in order to show an acceptance of the charter, after stating the award of stock, and notice thereof given by the Board of Managers, to show the election of Directories and of a Central Board, and the organization of the Bank by the election of Presidents.

If a vacancy in the office of Director, to fill which the defendant was elected, is stated to have been caused by the Directory refusing to admit to his seat a person elected Director, because there had been no legal transfer of stock made to him, the defendant cannot also set up in his plea that such person was not a citizen of the State; the Board not having adjudicated as to that matter when they decided on his claims to a seat, nor taken that as a ground for refusing him his seat.

Where an ordinance of the Central Board required all transfers to be entered on the transfer book of the proper office, before an assignee of stock could become a stockholder, such ordinance could not be disregarded by the local Boards. If no transfer book had been provided, no person became a stockholder by any transfer.

If, after judgment of ouster, the defendant still continues to exercise the office, under any title obtained before judgment, he will be attached for contempt.

A writ of *quo warranto* issued against Carey A. Harris, requiring him to show by what warrant he exercised the office of President of the Real Estate Bank. The defendant first filed one plea, to which

a demurrer was sustained; and he then filed three pleas, tu each of which the State demurred. The objections to the pleas will be understood from the decision of the Court. The demurrers were argued by—

Ashley, for the State:

Fowler, *Contra:*

Ringo, C. J., delivered the opinion of the Court :

This is a writ of quo warranto, requiring the defendant to show by what warrant he exercises the office of President of the Real Estate Bank of the State of Arkansas. The defendant appeared to the action, and filed a plea, setting forth the authority by virtue of which he claims the right to exercise said franchise; which, on demurrer thereto, was adjudged insufficient, and leave granted the defendant to answer over; whereupon, he filed three separate pleas to the action, each purporting to show a distinct authority for his exercising said office. To these pleas the plaintiff filed a demurrer, assigning therein specially numerous and various causes of demurrer. The defendant joined in the demurrer; and the legal questions arising thereupon being argued by counsel, as well on behalf of the plaintiff as the defendant, were submitted to the Court, and are thus presented for our consideration and decision.

It will be remembered that the writ of quo warranto, which the State may issue at will and of right, is emphatically a demand made by the sovereign upon some individual, to show by what right he exercises some franchise appertaining to the former, which, according to the constitution and laws of the land, he cannot legally exercise, except by virtue of some grant or authority from the sovereign; and that in such case, the law imposes upon the defendant the burden of showing such grant or authority as invests him with the legal right to such franchise. And therefore the defendant, in answering such demand of the State, unless he disclaim all right to the franchise in question, and deny that he has assumed its exercise, must show such facts as, if true, completely invest him with the legal title to it; otherwise, the law considers him a usurper, and denounces judgment against him,

leaving the franchise to be held by the State, or such other person as may have a valid legal title thereto, derived by or from some grant or authority from the State.

Do the facts contained in the pleadings under consideration, show the defendant invested with the legal right to hold, enjoy, and exercise the franchise of President of the Real Estate Bank of the State of Arkansas?

The charter of said Bank restricts the right of holding the capital stock thereof to citizens of the State of Arkansas, owning real estate situate therein, during the period of four years from the date of the charter, which was approved on the 26th day of October, 1836, except in the case of partners, where one of the partners is a citizen of this State, and owns not less than one-third of the property taken as security for the stock based thereupon. (Sec. 13, 20).

The right of becoming a Director is restricted to such persons as are stockholders; and the right of becoming a member of the Central Board of Directors, is limited to those who are members of the different Boards of Directors of said Bank; and again, the right to become President of the Bank, is further restricted to the three Directors who are members of the Board of Directors of the Principal Band, and also of the Central Board of Directors of said Bank.

The defendant, therefore, to establish a valid legal title to the franchise in question, is bound to show:

First, The acceptance of the charter by the corporators;

Secondly, That he is a citizen of this State;

Thirdly, That he is the owner of real estate situate in this State;

Fourthly, That he is legally a holder of capital stock of said Bank:

Fifthly, That he is a Director of the Board of Directors of the Principal Bank;

Sixthly, That he is a member of the Central Board of Directors of said Bank; and

Seventhly, That he is President of said Central Board.

As regards citizenship, the simple averment in the plea, that the defendant is a citizen of this State will be sufficient. But to show that he is the owner of real estate situated in this State, inasmuch as that fact must depend upon a grant from the United States, or some

grant or concession confirmed by their authority, and the defendant whether he be the grantee, or confirmee, or derives his title thereto by direct conveyance from the grantee or confirmee ; or by and through other intermediate conveyances, or by descent, devise, or other legal transfer, can only establish his title by exhibiting the deeds, or records by which it is acquired; all of which the law presumes to be in his possession; consequently as he has their legal custody, and is presumed to know the facts by which he can establish his title to the estate, better than his adversary, he must, according to the well settled principles of pleading, by appropriate averments in his pleading, describe the real estate owned by him, show that it is situate in this State, and how he derives title thereto, so that the Court may see and determine whether or not he is the legal owner thereof, and if necessary to the attainment of justice, that an issue may be formed thereupon as to that fact. In this respect, the defendant's pleading is defective and insufficient.

According to the provisions of the charter, capital stock of the Bank could be acquired originally by citizens of this State only, (except in cases embraced by the proviso to the 20th section of the charter) who subscribed therefor, at one of the places named in the 4th section and within the time prescribed by said 4th section of the charter; who were in good faith owners and possessors of land situate within this State, which land or a part thereof was in cultivation, or on which the subscriber then resided and had his homestead, with the intention of extending the cultivation and improvement thereof as required by the 15th section of the charter; and caused the same to be appraised according to the requisitions of the 6th section, and secured the stock so subscribed for, by mortgages of such land, and by bonds executed to the Bank in conformity with the provisions of the 15th section of the charter, perfected to the satisfaction of the managers, appointed and acting according to the directions and prescriptions contained in the 5th section. Upon such securities being approved by the managers as sufficient, and the amount of stock to which each subscriber was entitled, being by them ascertained and adjusted, in the manner prescribed by said 5th section of the charter, and a schedule made by said managers, as required by the section

The State *against* Carey A. Harris.

last mentioned, every subscriber, whose security was so approved and whose subscription had been so adjusted, according to the obvious design and meaning of the provisions of the 5th and 7th sections of the charter, is to be considered the holder of so much of the capital stock of said bank, as appears to have been thus secured and awarded to him, and entitled to all the benefits accruing therefrom, and subject to all the responsibilities incident thereto, until he voluntarily parts with his stock, or is legally divested of it in some manner authorized by law. It follows therefore that the defendant, according to the principles before stated, is bound to show by appropriate averments in his pleading in response to the demand of the State, that there was a board of managers as contemplated by the 5th section of the charter; that such board was legally constituted in pursuance of, and according to the provisions in said 5th section contained; that said managers received from the superintendents named in the 4th section of the charter, the books of subscription together with the titles and other documents accompanying the same, and made out a schedule therefrom as directed by said 5th section: That eleven thousand two hundred and fifty shares of the capital stock of said bank, appeared to said managers to have been subscribed for, and that all mortgages intended to secure the same had been perfected to their satisfaction, and that said managers thereupon awarded to him, or (according to the fact) to the person from whom he derives his title to the stock, (if he is not a subscriber therefor) a certain amount of the capital stock of said bank, and in the latter case, show further how he has acquired title to the stock, so awarded to another ; and exhibit the title deeds, or records, by and through which he derives title to the stock in question, or show some legal excuse for their non-production, so that it may appear to the Court, that he is the legal holder of the stock, and that the same has been awarded, and if transferred, that it has been legally transferred to him in the manner prescribed by the charter and according to the provisions of law.

If the defendant claims to have been elected a director of the bank, of the board of directors for the principal bank at Little Rock by the stockholders themselves, he must show the ordinance of the central board of directors appointing the time and place for holding

such election, and the notice thereof, as well as every other ordinance or act of the central board relating to such election; that is, he must exhibit so much of the ordinances and acts of the central board as are necessary to show that such election was legally held, and by proper averments show that it was held agreeably to law, and in conformity with, and in pursuance of the ordinances and regulations of the central board, and that he received a majority of the legal votes given at such election, and was thereupon legally qualified and inducted into said office. But if he claims the office by virtue of an election, by the board of directors, to supply a vacancy therein, he must show that there was at the time of his election a board of directors competent to elect, of which some prior incumbent of the office was a member and whose place had become and was vacated, and continued vacant at the time of his election by the board, either by his death, resignation or absence from the United States, non-acceptance, refusal to qualify, or removal from office, and in the latter case, the order, resolution or sentence, by virtue of which he was removed, must be shown, and he must also further show his election to fill such vacancy, and his subsequent legal qualification and induction into said office. If he claims the office by virtue of an appointment by the Governor, he must in like manner show the appointment; and if it be to supply a vacancy, show how the vacancy arose.

The defendant must also show that there was a board of directors, for the principal bank at Little Rock, for the transaction of business competent thereto, and that he was selected by such board a member of the central board of directors; and then show that there was a central board of directors, constituted according to the provisions of the charter, and acting as such, and that he was by such central board, elected President of the central board of directors.

All of these facts the defendant is bound to show because his title to the office in question depends upon their existence. And they, like all other facts pleaded, must be set forth in legal form and with reasonable certainty, so as to show in the defendant, prima facie, the legal title to the franchise in question, and form the basis of an issue, if the attorney for the State shall deem it proper to controvert the truth of the facts as pleaded, or admitting their truth, to show other

The State *against* Carey A. Harris.

matter in avoidance, or which estops the defendant from claiming title to the office.

That we may not be misunderstood as to the view which we have taken of the subject before us, we deem it proper to add, that we consider the managers whose appointment is authorized and required by the 5th section of the charter, as possessing a special authority only, particularly defined and expressly limited, and therefore, any person, claiming a right which could only be acquired through or by their acts or proceedings, must show that the matter was within their cognizance, and that they acted in pursuance of the authority with which they were clothed: That the board of managers, when legally constituted and organized, possessed the exclusive right of determining in the first instance, upon the sufficiency of the security offered by the subscribers for stock, and also the amount of stock each subscriber had secured and was entitled to according to the rules prescribed in the 5th section of the charter: consequently their decision as to the sufficiency of the security and the amount of stock to which those who subscribed therefor, during the period limited for subscriptions, upon the first opening of the books of subscription, were severally entitled, must be considered as determining prima facie, the right of each subscriber to share or not share the capital stock of said bank, as well as the amount which those who appeared to them entitled to share the stock, had respectively secured to their satisfaction, and thereby acquired the right to hold. And, in our opinion, such of the subscribers as by the final determination of the board of managers were admitted to be entitled to stock, became *ipso facto* stockholders, and were thereupon respectively entitled to all the rights, privileges and immunities conferred by the charter upon the stockholders in said bank. And therefore in pleading to show his legal right to stock, such original subscriber is only bound to show that he was a citizen of this State, (or is embraced by the proviso to the 20th section of the charter) and the owner of lands situate therein: That a board of managers was appointed and organized, according to the provisions of the 5th section of the charter; that such board received the books of subscription, title deeds, mortgages and bonds from the superintendents named in the 4th section of the charter, and made a schedule

73

as directed in the 5th section thereof, and determined that he was entitled to a certain amount of the capital stock of said bank, with proper averments, showing that his subscription for stock was made within the time limited by the charter. These facts are sufficient in law to create a legal title to stock, and notwithstanding the holder thereof may be divested of his right, it is not necessary for him to show it, but the State, if she wishes to take advantage of it, must show the fact by way of replication to the defendant's pleading. We do not however deem it necessary to express any opinion as to the grounds upon which, or the mode of proceeding by which, a stockholder may be divested of his stock, as that question is not legitimately presented by the pleadings before us.

We also think it proper to state that the defendant, in order to show a legal right to exercise the office of President of the Bank, needs not show that the several members of the different boards of directors, by and through whose election or selection, he derives title to the office, were either citizens of the State, or stockholders, or directors *de jure*, as the law presumes those who act in that capacity under color of right, as possessed of every requisite qualification, and that their acts are authorized and valid until the contrary appears; and therefore, in this respect, his pleading will be sufficient, if it shows in each instance a board of directors acting under color of legal right, and in every other respect legally competent to make such election or selection, as the case may be, leaving their incapacity, disqualification or want of qualification, if any exists, to be shown by the State in avoidance of the right so shown by the defendant. The defendant however, as to the facts necessary to be stated as well as the mode of stating them stands precisely in the attitude of every other suitor in Court; and therefore he is only bound to show in the first instance such facts as, if true, confer upon him a legal right to exercise the franchise in question. But like other suitors, he is bound to show, by his pleading, all deeds, ordinances, records and written documents, without which he could not acquire or possess the legal right to hold or exercise the franchise; and if he fails to do so, without showing some valid excuse for not doing it, his pleading must for this cause be deemed insufficient.

This explanation of the views which we entertain in regard to the legal requisites of the defendant's pleading in the case before us, and of the principles upon which some of our conclusions are based, we think sufficiently explicit to prevent any misconception thereof, and therefore we deem it unnecessary to say more on the subject.

The rule as to prolixity in pleading does not dispense with the statement in a concise and legal manner of such facts as are indispensable to show a legal right to the thing demanded, or a valid legal defence against the right claimed, or demand made by the plaintiff, nor can any pleading containing nothing more be legally objected to on account of its length.

From this exposition of the law it will be perceived at once, that no one of the pleas of the defendant contains all of the facts essential to show a legal right in the defendant to exercise the franchise of President of the Real Estate Bank of the State of Arkansas; and therefore the demurrer thereto is well taken, and must be sustained.

The defendant then offered an amended plea. The State, upon written exceptions objected to its being filed ; and the exceptions were argued by

Ashley and E. L. Johnson, for the State:

Pike, *Contra:*

After consideration the Court held, that the plea was bad, in not proceeding, after stating the award of stock, to show notice thereof given by the board of managers, the election of directories and of a central board, and the organization of the bank by the election of President.

And they further held it bad, because it set up the fact that Collins who had been elected a director, and his seat refused him, and Harris elected to fill the vacancy, was not a citizen of the State; a matter as to which the boards had not adjudicated, when they decided on his claims to his seat ; and not taken by them as one of the grounds for refusing him his seat.

And because it stated that the transfers from the original stockholders and others, whose assignee Harris was, were not entered upon a

transfer book; for it was held, that the ordinance of the central board was peremptory, and could not be disregarded by the local boards ; and that if no transfer book had been provided, no person had become a stockholder by any transfer which had taken place; and that a transfer book must be opened, and the transfer entered on it, before the transferees could become stockholders.

They therefore refused leave to file the plea: whereupon the defendant declined offering any further defence, and judgment of ouster was entered accordingly.

And at a subsequent day of the term, the State showing by affidavit of her attorney, and it appearing on examination of the Cashier of the bank that the defendant was still acting as President of the bank, under an election held before judgment of ouster pronounced, the Court ordered a rule to go against him, to show cause why he should not be attached for contempt for exercising the office under such warrant after judgment of ouster pronounced ; but refused to compel him to give security that he would not exercise the office in future.