Mr. Justice Thacher
delivered the following opinion, in the ease of the Commercial Bank of Rodney against the State.
This was a proceeding against the Commercial Bank of Rodney, under the statute of 1843, entitled “ An act to prescribe the mode of proceeding against incorporated banks, for a violation of their corporate franchises, and against persons pretending to exercise corporate privileges, under acts of incorporation, and for other purposes.”
This act provides, that it shall be the duty of each district attorney in the state, whenever he shall have reason to believe, or whenever the affidavit of a credible person shall be presented to him, stating that he has reason to believe, that any incorporated bank has been guilty of a violation of any of the provisions of its charter, or has done, or omitted to do any acts, which would work a forfeiture of its charter, or that any corporation, person, or persons are exercising, without legal warrant and authority, the franchise of being a banking corporation, forthwith to file in the clerk’s office of the circuit court of the county in which such bank shall be located, or in which such franchise shall be so exercised, an information in the nature of a quo warranto, against such bank, corporation, or persons, and that the clerk shall thereupon issue the proper process, returnable to the next succeeding term of the circuit court. It pro *483 vides that such informations shall be docketed upon the common law issue docket, and triable, if possible, at the first term of the court, after they shall have been filed. The 6th section of the act provides, that upon information being filed, in pursuance of the provisions of the act, it shall be the duty of the clerk, as a matter of right on the part of the state, to issue an injunction or injunctions, to restrain all persons from the collection of any demands claimed by said banks, corporations, persons, or assignees of corporations, or officers and agents of corporations, or other persons, until the information be finally tried and determined, which injunctions shall have the office and effect of an injunction in chancery. The act provides that, upon judgment of forfeiture, the debtors of such banks, corporations, and persons, shall not be released by such judgment from their debts and liabilities, but that trustees shall be appointed to collect the same, and to sell the property owned by such banks, corporations, and persons, and apply the proceeds to the payment of the debts of such banks, corporations, or persons. The act excepts from its provisions the funds belonging to the state, and excepts the Commercial and Railroad bank of Vicksburg, and the West Feliciana Railroad and Banking Company, so far as the railroads and their operations are concerned.
The constitutionality of this law is denied.
There can be no doubt, and it has so frequently been held, that it is a legitimate exercise of legislative power, in cases of the violation of a charter, or the assumption of corporate franchises, to provide a proper and effectual mode of ascertaining those facts, by judicial investigation, and also to provide the means of securing the personal assets of such forfeited and unauthorized corporations, for the benefit of those interested in such assets. Such an exercise of power is suitable and proper, to vindicate and recover the rights and sovereignty of the state, and to protect innocent persons, who have been induced to contract with such institutions.
The bank, in this case, contends that the writ of injunction issued against it, under the 6th section of the act above quoted, *484 should be quashed, and the injunction dissolved, alleging that the law under which it issued is unconstitutional, as impairing the obligation of the contract of charter between the state and the bank, and also the obligation of contracts existing between the bank and its debtors.
Without disputing, for the present, that a bank charter is a contract within the meaning of the constitution of the United States, it is not seen how the injunction, in this case, violates or impairs any obligation of the state, accruing to the bank from its charter. All charters are granted for some specific object, and when they fail to accomplish that object, or refuse to comply with the terms of the grant in any essential particular, the grant is forfeited, and the grantees are liable to be deprived of their corporate franchises, on proof of the cause of forfeiture. Upon a dissolution of a corporation, the personal property vests in the state, and it follows, as an unavoidable consequence, that the legislature, in such event, may direct the disposition of such personal assets.
The injunction authorized by the statute, upon the filing of an information in the nature of a quo warranto, by a district attorney, enjoins the bank, &c., from the collection of any demands claimed by the bank, until the information be finally tried and determined. The right of the state to an injunction is sustainable upon two grounds; namely, 1st. Corporate franchises can emanate alone from the state, and the right to restrain by law their usurpations follows, as a necessary power, to protect the state ; and, 2d. The state has a contingent interest in the personal property of the corporation, which becomes absolute on the dissolution of the corporation. An information filed under this statute, like the common law information, is prima facie evidence that the bank has forfeited its charter ; and if upon service of process, as required by the statute, the bank does not appear and plead, there may be judgment, as at common law, of seizure of the franchises claimed in the information to have been usurped. The bank cannot plead non assumpsit, but it must either disclaim or justify ; because the object of the proceeding is, to compel the bank to set forth by *485 what warrant or authority it holds the franchises asserted to be usurped or forfeited. Ang. & Ames on Cor. 492, et seq. The onus probandi is entirely on the bank. The People v. Utica Insurance Company, 15 Johns. 362-388. Bank of Auburn v. Aiken, et al., 18 Johns. 137. The People v. Kingston and Middletown Turnp. R. Company, 23 Wend. 193. The State v. Ashley, 1 Ark. R. 513. The State v. Harris, 3 Ark. R. 570. The information being evidence of the usurpation or forfeiture charged in it, until fully disproved, it is a legal consequence, that the information is evidence, until disproved, of the right of the state to the personal property of the bank, although the possession remains with the bank until dissolution. The state may, therefore, preserve such property from waste, and the writ of injunction is the usual remedy in such cases. The right to this peculiar remedy, on the part of the state, arises from the relations of property subsisting between the state and the corporation, and, therefore, forms a part of the contract of charter. It is a well settled rule, that corporations take property subject to all the incidents which the general laws of the land attach to it. The injunction neither violates nor impairs the obligation of the charter contract, on the part of the state ; because the property enjoined by it is presumed, on the face of the information, to be held by the bank in fraud of the rights of the state. The right of a state, by statutory enactment, to cause to be enjoined banking companies from the use of their franchises, upon bill or information filed, and before a dissolution, has been repeatedly sustained, by adjudications in the states of New York and Massachusetts. 3 N. Y. Rev. Stat. 581-583. Mass. Stat. 1838, c. 14. Bank Commissioners v. Bank of Buffalo, 6 Paige’s Ch. R. 497. 2 Kent, 313. Commonwealth v. The President of Farmers and Mechanics Bank, 21 Pick. 542.
Again ; it has been urged that the injunction deprives the bank of the right to sue, and thereby abridges the duration of that franchise. The right of the bank to sue, is derived from its charter. As has already been said, the information makes a prima facie case of forfeiture ; a forfeiture annuls all the *486 rights of the bank, including the right to sue ; the injunction, therefore, restrains only the wrongful use of that franchise. By enjoining the bank from collecting its assets, it is thereby , most effectually deprived of the power to waste them. Besides, injunctions have never been construed to take away any absolute rights, or to impair the obligation of any contracts on which they operate.
It is further objected to the 6th section of the statute, that it confers equity jurisdiction upon the circuit courts, and is, therefore, repugnant to the 16th section of the 4th article of the constitution of this state, which gives to the court of chancery “ full jurisdiction in all matters of equity,” and permits the circuit courts equity jurisdiction only in cases when the amount in controversy does not exceed five hundred dollars, &c. The jurisdiction of a court of chancery does not extend to cases of forfeiture by corporations; the remedy, in such cases, is purely legal. At common law, on a judgment of forfeiture, the debts due to and from a corporation, were extinguished. This worked a great hardship on the creditors of the corporation, and the legislature have, therefore, wisely altered the common law remedy, by providing that the assets of banking corporations, on dissolution, shall be preserved, and applied to the payment of their debts. It was also foreseen by the legislature that banks might protract, by litigation, the suits against them, and before judgment entirely dispose of and squander their assets. To avoid this evil, an additional remedy was necessary. The legislature, accordingly, made a writ of injunction, returnable into the circuit court, as a part of the process in the case, to issue of course, and as a matter of right, on the filing of an information, which writ has the office and effect of an injunction in chancery. Although it has the effect of the equity writ of injunction, it is not an equity writ; because injunctions in equity never issue of course, or as a matter of right, but may be granted or refused, at the discretion of the court. It is a new remedial writ at law; one that has never been exercised by a court of chancery; it was not in existence when the constitution of this state was adopted, and cannot, consequently, *487 be claimed as a power pertaining to the court of chancery thereby established. In the case above quoted, from 21 Pick. R., on p. 552, the court say, that “ it seems to be a well settled rule, that when the legislature have the power to provide redress for either a public or private wrong, the remedy, or mode of redress, is wholly a subject of legislative discretion. If an injunction is better adapted to accomplish the objects proposed, than any other form of judicial process, there seems no reason why the legislature should not have power to direct it. It has already been provided for in the case of waste, where it may issue at once; so to prevent a nuisance, when the mischief to be done would be irreparable.” The right to an additional and enlarged remedy having been shown to exist in good conscience, and no such remedy existing either at law or in equity, the legislature had hence the power to appoint one sufficient for that object. It must be seen, then, that the legislature has neither abridged the jurisdiction of the chancery court, as established by the constitution, nor has it conferred equity jurisdiction on the circuit courts. Even admitting that the injunction here authorized is an equity writ, the granting of the writ does not confer jurisdiction of equity matters. There is a wide difference between the jurisdiction of a court and the process by which that jurisdiction is enforced. The term, “ full jurisdiction in all matters of equity,” as used in the constitution, refers to the subject-matter in litigation, not to the process of enforcing the jurisdiction of the court. The jurisdiction of the court of equity is established by the constitution, but the mode of enforcing it is left to the-legislature. The jurisdiction of a judicial tribunal is the right to administer justice, through the laws and by the means which the. legislature may provide for that purpose. It is based on person, place, and subject-matter, and the various actions, and writs and other process, provided by law, are but the instruments made use of in the application of the law peculiar to the different tribunals established by the constitution.
It is further contended that the legislature have exercised judicial power in prescribing that an injunction shall issue as a *488 matter of right, upon information being filed in pursuance of the provisions of the statute, and that therefore the act is unconstitutional and void.
Judicial power can be exercised only where there are rights in litigation between particular parties, who are to be affected by the exercise of that power and between whom issues of law or of fact are presented for decision. The exercise of judicial power is to direct something to be done, suffered or omitted by a particular party. The statute does not prescribe that an injunction shall issue in any particular case, or against any particular bank or person. It decides no question of law or fact, it pronounces no judgment, sentence, order or decree; it directs nothing to be done, suffered or omitted by any party to a suit. It simply prescribes under what circumstances, and upon what state of facts, the district attorney shall file an information in the nature of a quo warranto, and that thereupon the clerk shall issue a writ of injunction which shall remain in force until the information shall be finally tried and determined. Actions at law and the process issued upon them are remedies for the vindication and recovery of rights, and the prevention of wrongs. An information in the nature of a quo warranto is an action at law for the vindication and recovery of a right, and the injunction issued in consequence of the filing of such information is a species of mesne process for the prevention of wrong, until the right is finally determined. It is therefore very clear that the legislature have not performed a judicial act or exercised judicial power, but have merely prescribed a general remedy in a particular class of cases, which is a legitimate use of legislative power. The case in 21 Pick. R. 550, referred to above, fully sustains the foregoing views, and is an express adjudication upon this point.
The position that the issuance of the injunction by the clerk is a judicial act, is equally untenable. He performs no act of a judicial character. He is directed by the statute to issue the writ of injunction upon the filing of an information. The statute is mandatory and positive. The only thing to be judged of by him is the single fact that an information has been *489 filed, and this having been found by him to have been done, as a minister of the law, he issues the writ. Its force and effect is prescribed by the statute, and it derives none of its power or validity from any act performed or discretion exercised by the clerk who issues it. In the case of Rice et al. v. Parkman, 16 Mass. 326, it was decided, “ that a mere ministerial act, though requiring discretion, and sometimes a knowledge of law for its due exercise, may still partake in no degree of the characteristics of judicial power.”
It is a Iso objected that the injunction restrains the assignees of the bank from collecting claims due them as such assignees, and who are also not parties to the information. The record shows that the assignees are in possession of all the assets of the bank. If the information is sustained, the property of the bank goes into the hands of trustees. It is contended, however, that the bank has parted with its title to that property, and that the same is vested in the assignees for the benefit of creditors. In all such assignments, the grantor has a contingent interest that if any surplus should remain, after a satisfaction of the debts due to the creditors, it reverts to the grantor. Without admitting the validity of the assignment, such contingent interest of the bank in the property in the hands of the assignees forms a sufficient ground to serve the injunction against the assignees. The circumstance that they are not parties to the information is no obstacle. Persons, other than parties to a suit may be restrained by injunction from committing waste of the property in litigation. Drewry on Injunct. 370. The validity of the assignment need not necessarily be investigated here. The question as to that will arise, if not sooner, when the property of the bank is ordered into the custody of the trustees to be appointed in the event of a judgment against the bank. The legislature have directed that the injunction shall issue against the assignees of the bank, and it has been so issued. There is no pretence that the act in this particular is in violation of any clause of the constitution, and it is therefore the law of the land,.and must be enforced.
The last point which calls for notice, is, that the information *490 in the nature of a quo warranto, is claimed to be a criminal proceeding, and that it consequently falls within the prohibition of the constitution of this state, (Bill of Rights, § 12,) which guaranties “ that no person shall, for any indictable offence, be proceeded against criminally by information.” Whatever doubts might formerly have been indulged respecting the nature of this proceeding, especially when a fine constituted a part of the final judgment against a corporation, under our statute it is used for the sole purposes of determining a civil right, and ousting a wrongful possessor of a franchise, and is therefore exclusively a civil proceeding. This conclusion has been expressly decided in Pennsylvania, the constitution of which state contains a clause, in reference to criminal proceedings, verbatim with the one quoted just above from our own. Respublica v. Wray, 3 Dallas, 490; The Commonwealth v. Brown, 1 Serg. & Rawle, 385.
The foregoing review of this case brings me to the conclusion that the statute in question is in all respects constitutional and valid, and that the whole proceedings, as given by the statute, in its inception, progress and termination, is properly and solely cognizable in the courts of law. I am therefore of the opinion that the judgment of the court below, in refusing to dissolve the injunction in this case, should be affirmed, and the cause remanded for further proceedings.
Mr. Justice Clayton
delivered the following opinion In the case of the Commercial Bank of Manchester against the State.
This is an information in the nature of a quo warranto against the bank, requiring it to show by what authority it assumes to exercise corporate franchises. It is instituted under the act of 1843. Under the 6th section of that act an injunction was issued by the clerk of the circuit court, at the time the information was filed, restraining the bank from proceeding to collect any of the debts due to it. A motion was made in the circuit court to quash this injunction, which was overruled, and the cause thence comes to this court.
The language of that clause in the act under which this pro *491 ceeding took place, is, in substance, as follows: “ That upon information being filed in pursuance of the provisions of this act, it shall be the duty of the clerk, as a matter of right on the part of the state, to issue an injunction or injunctions to restrain all persons from the collection of any demands claimed by said bank or banks, person or persons, or assignees or corporations, and all their officers and agents, or other person or persons, until the said information be finally tried and determined, and said injunction shall have the office and effect of an injunction in chancery, and shall be served, in like manner as injunctions in chancery are served.”
It is insisted, in an argument of unusual ability, that this clause stands opposed both to the constitution of the United States and of this state. To decide upon a question of this character, involves the exercise of the highest duty which pertains to the judiciary, and it ought only to be resorted to, when that duty is plain and manifest. Much is due to the coordinate departments of the government, whose concurrence is necessary to the enactment of any law. Yet they sometimes act, perhaps, without full consideration, and without that sifting and searching scrutiny, which is applied in forensic investigation, conducted on both sides by minds sharpened by habit, stimulated by interest and emulation, and which is best calculated to detect any opposition of the law to the constitution. If such conflict exist, the constitution of this state declares that the law shall yield, and shall be declared void.
The great importance of the principles involved, and the vast amount of pecuniary interest at stake, have induced us to tax our minds to the utmost to discover the truth. Duty prompts us, when discovered, to follow, whithersoever it may lead.
It may now be regarded as settled in the courts of the country, that a bank charter is a contract between the state and the corporators, and unless a power to repeal or alter it, be reserved by the legislature, it cannot afterwards be repealed or altered without their consent. Crease v. Babcock, 23 Pick. 240; Planters Bank v. Bank of Alexandria, 10 Gill & Johns. 1. In plainer language, the legislature can do no act inconsistent with the fair *492 meaning of the contract it has made. In England one of the great contests, which gave a shock to the power of the Stuarts, from which they never recovered, was the arbitrary attempt to take away the charter of the city of London. The friends of liberty, the revolutionary party, were arrayed in resisting the attempt, whilst the satellites of arbitrary power were ranged on the other side. After the revolution of 1688, the judgment by which it was accomplished was declared void, and its charter made perpetual by act of parliament. 2 Bac. Ab. 285.
The principle of the inviolability of contracts was thought by the framers of the constitution to be of sufficient importance to be secured by an express provision. Whilst we accord its full weight to this clause, we must give effect to another principle, which is equally established in England and in our own country; which is, that charters are always granted upon a condition, either express or implied. 3 Cruise Dig. 306. There are always implied conditions in every charter, if not express, that the corporation shall perform certain trusts, and discharge certain duties, and upon breach of these conditions, the government may resume the franchise. Tn Terret w. Taylor, 9 Cr. the rule is thus stated ; “a private corporation, created by the legislature, may lose its franchises by a misuser or nonuser of them; and they may be resumed by the government, under a judicial judgment upon a quo warranto to ascertain and enforce the forfeiture. This is the common law of the land, and is a tacit condition annexed to the creation of every such corporation.” See also 7 Peters, 286. This principle has been recognized and enforced in many of the states of our Union, and its justice and propriety settled beyond doubt. Massachusetts, New , York, New Jersey, Maryland, Virginia, South Carolina, Ohio, Indiana and Arkansas, have all acted upon it. Commonwealth v. Farmers and Mechanics Bank, 21 Pick. 542; People v. Niagara Bank, 6 Cow. 196; 23 Wend. 236; Commonwealth v. James River Company, 2 Va. Cas. 190; Planters Bank v. Bank Alexandria, 10 Gill & Johns.; 4 Ib. 1; State v. Bank of South Carolina, 1 Spears. 432; 11 Stanton’s Ohio R. 1; State v. Bank Vincennes, 1 Black. 267; 3 Ark. 570. Alabama is the *493 only state whose court has decided differently, so far as we have been able to ascertain. 2 Stew. Ala. R. 60, We shall follow the great current of authorities, rather than this single decision. The right to take advantage of this breach of condition, belongs to the government alone, and that may waive the right at its discretion. This is in fact frequently done by express enactment, as in the instance of the Bank of England, when it suspended specie payments for twenty years, and has been often done in reference to banks in this country ; but still more frequently by tacit indulgence. Yet if the state claims to enforce its right, and to exact the forfeiture, the courts of the country have only to award the judicial consequence. There is nothing in the laws or the constitution to prevent it.
This point did not seem to be much controverted by the counsel of the bank. The great question with them is — not whether the charter may be taken away on the ground of forfeiture, but whether, during the pendency of proceedings for that purpose, the bank can by statute be constitutionally restrained from the exercise of its corporate franchises. In other words, whether the legislature has the right to declare it shall not go on with its usual powers, until the judgment of forfeiture is pronounced. The objections urged in this point of view are, that the act impairs the obligation of the contract, by which the bank is invested with plain and express power to sue, in this, that the right to sue is taken away before a judgment of forfeiture is pronounced. Next, that it violates the state constitution, because the injunction is directed to be issued by the clerk of the circuit court without judicial fiat, and is made to continue until the information is finally disposed of.
This question, in some of its aspects, is not new in our sister states. New York, New Jersey, Ohio, Massachusetts, and Maryland, have passed statutes on the same subject, to prevent fraudulent insolvencies on the part of banks, containing many of the same general features with ours. Their constitutionality has been recognized by their respective courts. Bank of Columbia v. Attorney General, 3 Wend. 588. Oakley v. Patterson Bank, 1 Green, 174. Commonwealth v. Farmers and Me *494 chanics Bank, 21 Pick. 544. Bank of Maryland v. Ruff, 7 Gill & Johns. 465. In this last case it is said by the court, that the law had been pronounced valid by the supreme court of the United States. Gilmore v. Bank of Cincinnati, 8 Ohio, 130.
A distinction, however, is drawn between the statutes of these several states and the one under consideration in this, that in those- states the injunction upon bill filed is awarded by a judge, in the exercise of chancery jurisdiction, to remain .until further order, or until final hearing of the injunction ; in this it is issued by the clerk, as matter of right; it is not returned into chancery, and is directed to be retained until the final determination of the quo warranto. The bank is restrained from bringing suits in any instance, until the decision of the information, except that it may issue attachments against absconding debtors. This distinction will be hereafter adverted to.
It is insisted that the writ thus issued impairs the obligation of the charter, as a contract, because by it the bank is invested with power to sue, in the usual terms. The power to sue for and collect its debts, is one which is highly necessary to a banking institution, indeed it is indispensable to the existence of a bank of discount. The question, then, is, whether this right can be restrained, before a judgment of forfeiture in any other way than by the interposition of a court of equity. The rule on this point, in courts of law, has been judicially expounded in several of the states. In New Hampshire it is thus laid down : “ Although a corporation may forfeit its charter, by abuse or neglect of its franchise, yet the forfeiture must be ascertained and declared, by regular process and judgment of law, before its powers can be taken away, or the corporation be considered as dissolved.” State v. Carr, 5 N. H. R. 371. See also 10 N. H. R. 375. In Maryland it is said, “ that the funds of the bank are in its own hands, and not in the hands of the law, .until the forfeiture is judicially ascertained.” State of Maryland v. Bank of Maryland, 6 Gill & Johns. 230. The same principle is' deducible from the case of Planters Bank *495 v. Bank of Alexandria, in 10 Gill & Johns., in which it is laid down, that a bank does not cease to be liable to suit, until judgment of forfeiture is pronounced. The same is stated in 9 Gill & Johns. 426, and in 6 Cowen, 23. In Vanzant v. Waddell, 2 Yerg. 265, it is said: “Had the legislature said, that the bank should not have process for the collection of its debts, or that the court should not be open to its complaints, such law would not be valid.” These cases, however, only decide upon general common law principles, and do not, except the last, relate to a case in which a statute directly attaches .that consequence. Does this statute, in thus varying the common law doctrine, impair the obligation of a contract, and violate the constitution 1 It is certainly a question of much delicacy and nicety, and its difficulty is sensibly felt. In this case, the consideration is confined to that portion of time which elapses from suing out the information, until its final determination. It will be considered, first, in its reference to a court of law, and next in its reference to a court of chancery.
It was argued with much force, by the attorney general, that this law affects the remedy only, and that the whole class of remedies is under the control and direction of the legislature, to be varied, modified, and limited at their discretion. The language of some of the cases lends strong countenance to this doctrine. In 4 Wheat. 245, it is said, “ the forms of administering justice, and the duties and powers of courts, as incident to the exercise of a branch of sovereign power, must ever be subject to legislative will, and the power over them is inalienable, so as to bind subsequent legislatures.” Again, in 12 Wheat. 291, it is said, “ that it is far from being true, as a general proposition, that a government necessarily violates the obligation of a contract which it puts an end to, without performance. It is the motive, the policy, the object, that must characterize the legislative act, to affect it with the imputation of violating contracts.” The generality of these expressions, however, is much restrained and narrowed down by other cases. Mr. Justice Story thus deduces the rule from the authorities : “ Although there is a distinction between the obligation *496 of a contract, and a remedy upon it, yet if there are certain remedies existing at the time when it is made, all of which are wholly extinguished by new laws, so that there remain no means of enforcing its obligation, and no redress, such an abolition of all remedies, operating in presentí, is also an impairing of the obligation of such contract. But every change and modification of the remedy does not involve such a consequence. No one will doubt that the legislature may vary the nature and extent of remedies, so always that some substantive remedy be in fact left.” 3 Story’s Com. Con. 251. In the latest decision of the supreme court of the United States on the subject, the rule is thus stated : “ The laws in existence, when a contract is made, are necessarily referred to in all contracts, and form a part of them, as the measure of obligation to perform them by one party, and the right acquired by the other. If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party, to the injury of the other. The law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance, by the remedies then in force. Hence any law which, in its operation, amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the constitution.” McCracken v. Hayward, 2 How. S. C. R. 612.
This decision of that court whose determination is final, on all constitutional questions of this character, is binding as authority upon us, because our decisions upon such subjects may be revised by that tribunal. The doctrine here seems to be pushed farther than it was carried by the earlier adjudications of that court, yet I do not feel at liberty on that account to withhold- my assent. If the provisions of the sixth section, which suspend the action of the banks during the pendency of the quo warranto, are intended to be applicable to courts of law, then I come to the conclusion, that the part under consideration does impair the obligation of the contract contained in the charter, that the bank *497 may sue for the collection of its debts. The statute in restraint of assignments by the banks in this state, was sustained in reference to the Mississippi Rail Road Company and the Planters Bank, solely upon the ground, that the power to assign their bills receivable and evidences of debt, was not expressly given by the charter, nor was it necessary to enable them to carry out any of the powers granted.
Let us now return to the distinction before adverted to, in regard to courts of chancery. The jurisdiction of equity over corporate funds in England, was much questioned, and in some cases denied, except as to corporations holding to charitable uses. 1 Wooddes. Lec. 283. Mayor of Colchester v. Lowten, 1 V. & B. 225. Chancellor Kent lays down the rule, that corporations that hold to charitable uses, and that are chargeable with trusts, are accountable in equity for an abuse of trust. With that exception, they are amenable to the courts of law, and according to the course of the common law, for nonuser or misuser of their franchises. 2 Kent, 304. Angell and Ames, 511. The jurisdiction in this aspect extends no further, than the power of a court of chancery in all other cases of trust, to compel their performance, and to preserve and protect the fund. 3 Sto. Com. Con. 259. The question of forfeiture is to be tried at law, unless otherwise directed by statute; but where this power is conferred by statute on the court of chancery, there is nothing in the constitution of the United States to prohibit its exercise in that tribunal according to its own peculiar forms. This is the effect of the decisions in the various states of New York, New Jersey, Massachusetts, and Maryland, already cited. Of consequence they have right to resort to an injunction to preserve the fund, more especially when that right is given by statute. Apart from any statute the power may be, and frequently has been exercised. In Bank United States v. Osborn, 9 Wheat. 842, the court sayrs: “ The same conservative principle which induces the court of equity to interpose its authority for the protection of exclusive privileges will justify its interference to prevent the commission of waste, even in some cases of trespass, and in many cases of destruction. Its province is in such cases to arrest *498 injury and to prevent wrong.” Ib. 845. The court under its head of ancillary jurisdiction, has the undoubted right to provide for the safety of properly pending litigation. 2 Rob. Prac. 2. The principle is thus stated in Gilmore v. Bank Cincinnati, 8 Ohio Rep. 62: “Before the corporation is proceeded against by scire facias or quo warranto, a bill in chancery may be entertained against it, to restrain it from the misapplication of its funds, and the commission of frauds, upon the ground that the capital stock is a trust fund.” Now this exercise of equitable power does not impair the contract at all, whether employed under a statute, or in a state of case authorizing the interposition of equity upon its general principles of jurisdiction. It does not impair the contract, because equity does not act upon or affect the contract, it does not restrain or impede the course of the law in its prohibited sense; it only acts upon the parties, and prevents what is alleged to be a fraudulent exercise of trust powers. 2 Sto. Eq. 166, sec. 875. It applies the same general rule to corporations, which is applied without question to individuals. It is the principle on which our statute professes to stand, and it is the same on which the New York and Massachusetts laws and decisions rest. 3 Wend. 588; 21 Pick. 542. If a court of equity is in possession of the uncontrolled exercise of this authority upon the general principles of its jurisdiction, it is difficult to conceive how an act of the legislature can be arraigned as unconstitutional for enacting in substance the same provisions.
True, such bills, independent of statutory enactment, are filed by a party in interest, and when the parties are numerous, one may file for himself and all others. But if, as in this instance, a statute gives the right to the state to interpose, not in exclusion, but in aid of the creditors, waives the right of confiscation of the assets, and devotes all to the payment of the corporate debts, I can see no constitutional obstacle to such course.
The question then arises, whether, by the terms of the act, this proceeding upon the writ of injunction is intended to be at law, or in equity. I shall proceed to consider it with the single remark, that if the construction be doubtful, it is our duty to *499 place that interpretation upon it, which will enable it to stand, upon the trite maxim, ut res magis valeat quam pereat, that the act may live rather than perish.
The second section of the act makes it the duty of the clerk of the circuit court, upon the filing of the information, “ to issue the proper process, returnable to the next term of the circuit court.” The sixth section then provides, that “ it shall be the duty of the clerk, as matter of right on the part of the state, to issue an injunction, which shall have the office and effect of an injunction in chancery, and which shall be served, in like manner as injunctions in chancery are served.” The act does not' in terms direct, to what court this injunction shall be returned. The 51st section of the general circuit court law, directs “ that all process issuable out of, and returnable to the court of chancery in this state, may hereafter be issued by the clerks of the circuit courts respectively, and made returnable to the court of chancery.” H. & H. 493. Under this act it is the constant practice to issue writs of injunction by the clerks of the circuit court, returnable into chancery, and to act upon them as if issued by the chancery clerk. Taking these two acts together it is in my view, a fair conclusion, that the legislature intended that the injunction under the sixth section, should be returned into the chancery court, there to have the office and effect of an injunction in chancery, and to be strictly ancillary to the proceeding at law, in the preservation of the funds. With this fair and natural interpretation, the act does no^ come in conflict with the constitution of the United States. It may not be a forced construction either to hold, that the service includes the return, and hence that the words require the return to be made into the court of chancery.
It remains only to inquire if the act is repugnant to the constitution of this state. It is, in argument, said to be so, first because the injunction is directed to be issued as matter of right, without judicial fiat, that it is therefore an exercise of judicial power by the legislature, and next because it is directed to continue until the final hearing of the quo warranto.
It is certainly true that this statute violates the old and long *500 established usage as to the mode of issuing an injunction. One of the articles of impeachment against Cardinal Wolsey, the Chancellor of Henry Till, was that he issued writs of injunction upon petition instead of bill. The orders of Lord Chancellors Bacon and Clarendon direct that no injunction shall issue but upon bill filed. This method has continued till our day. Yet there is hothing in all this, which makes a change at war with the constitution. The writ of habeas corpus is the only one, which is rendered sacred, and beyond legislative control by that instrument. An injunction is regarded as process, and no reason is perceived why the legislature may not alter the mode of its issuance. Writs of error and supersedeas could formerly only be issued upon fiat of the judge, now they issue as of right upon petition to the clerk, and bond and surety given. An attachment is usually issued upon the order of some judicial officer, yet if a capias or summons be returned not found, the plaintiff may at his election sue out an attachment, and have it levied on the estate of the defendant. All this might with equal propriety be said, to be thé exercise of judicial power, and involve an infraction of the constitution. This seems to us to fall peculiarly within the rule, before cited from 4th Wheaton, 245, “that the forms of administering justice must ever be subject to legislative will.” Such legislation may be partial, it may extend only to particular objects and classes, and may therefore be objectionable ; but it does not follow that it is unconstitutional. See Williamson v. Williamson, Opinion Book B., 627; 2 Yer. 266.
The last objection to the act will now be considered — the direction that the injunction shall continue until a final hearing of the quo warranto. I have already stated that the process should have been returned to the superior court of chancery, so far as relates to the injunction. When so returned it must be subject to determination, according to the same rules which govern other causes. By the constitution it must be tried “ by due course of law.” So far as the act under consideration comes in conflict with this provision, it is void, but no farther. This conflict between the law and the constitution, does not give the court the right to quash the injunction upon motion, but it leaves *501 the court at liberty to proceed as in other cases, that is, to dissolve the injunction upon good cause shown. It is our duty to sustain the law so far as it is constitutional.
The constitution of this state not only provides for the establishment, of a separate superior court of chancery, but it virtually forbids conferring equity jurisdiction upon the courts of law, except in a few enumerated cases, of which this is not one. This injunction, therefore, should not have been returned into a circuit court, because such court had no jurisdiction over it. The object of the act was in fact to authorize two separate and distinct proceedings, the one in the nature of a quo warranto, to try the question of forfeiture of charter, a proceeding exclusively at law, (Ang. and Ames on Cor. 511,) the other to preserve the fund during the litigation, a proceeding exclusively within equity jurisdiction. This last proceeding was strictly auxiliary to the first, and could only be carried on in chancery. When there, the cause becomes subject to the jurisdiction of the court, to be tried and determined by the laws of the land. The attempted restriction upon the action of the court, staying trial until the hearing of the quo warranto, cannot be sustained. And this is the only part of the law in which any repugnancy to the constitution is perceived.
The case already cited from 21 Pickering, bears a strong resemblance to this. It establishes, on solid principles, the right to institute proceedings to inquire into a forfeiture of charter on the part of a bank, and to provide for the preservation of the property until the inquiry can be had, and to restrain the bank by injunction from proceeding with its business until the injunction can be tried. Our act goes a step farther in providing for the continuance of the injunction, until the quo warranto is heard ; and in this I think it transcends the constitutional limit. The case in Massachusetts was in equity, and is thus not within the influence of the doctrine laid down by the supreme court in McCracken v. Hayward. Confined to its actual circumstances, a proceeding in chancery, I regard it as free from objection.
It only remains to apply the principles herein laid down, to *502 the case before us. The writ of injunction was improperly returned into the circuit court, as it was not within the range of its jurisdiction. Hence it had no power to quash it, aud its refusal to do so was not erroneous. It ought however to have disclaimed any jurisdiction over it, and to have directed its return into the court of chancery, where it is properly cognizable. My opinion is that the order in the case should be affirmed, and the cause remanded to the circuit court, with directions to order the injunction to be returned into chancery, and the writ of quo warranto to be retained for trial.
The decision thus far relates only to proceedings against the bank directly, not to the assignees of those which have made assignments. Some of both classes were submitted. At this stage of the causes, a mere motion to quash the injunction, because of the alleged unconstitutionality of the law, I do not perceive any difference in the principle which is to govern them. In their further progress through the chancery court, it is very possible, that a distinction may be found; but we need not an ticipate.
It may not be out of place to remark that if any embarrassment should be experienced in conducting the cause in chancery, by reason of the change in allowing the injunction without bill, the 15th section of the act of 1840, p. 19, may very probably be found to afford a remedy for the difficulty. That directs the governor, in certain circumstances, “ to instruct the attorney general to institute proceedings against banks acting in fraud for the purpose of anticipating or avoiding in any way the effects of a forfeiture of charter, to enjoin the same, according to the provisions of the laws in force and in use in other cases.” The whole series of laws on this subject should be construed together.
As my view in regard to the injunction, and its return into the chancery court, does not meet with the concurrence of either of the other members of the court, my opinion in that particular stands alone. I unite in the directions which are drawn up by a majority of the court, for the entry of the judgments in the several cases, and for the guidance of the circuit courts.
*503 Mr. Chief Justice Sharkey
delivered the following opinion in the case of The Commercial Bank of Manchester against the State.
There are three other cases which have been argued and submitted with this, which raise the same questions, with a single variation in one of them. They have been discussed at length, and with an ability commensurate to the importance of the questions involved. The right to have the judgment reversed is asserted on the ground of the alleged unconstitutionality of the law under which the proceeding originated. The constitution is the supreme law of the land, and paralyzes whatever may encroach upon the principles of government which it asserts, either directly or remotely, and it becomes our duty, however delicate and unpleasant it may be, to announce the point of confliction, and that far to declare the law inoperative and void.
An information, in the nature of a quo warranto, has been filed against the corporation, under the act of the legislature, approved the 26th of July, 1843, which provides the mode of proceeding against incorporated banks for a violation of their corporate franchises, various acts of forfeiture being alleged in the pleadings, which it is not now necessary to notice. At the time of filing the information, the clerk of the circuit court, in whose office it was filed, issued an injunction against the bank, under the sixth section of the act, which declares that upon information being filed, it shall be the duty of the clerk, as a matter of right on the part of the state, to issue an injunction to restrain all persons from the collection of any demands claimed by said bank or banks, person or persons, or assignees or corporations, and all their officers and agents, or other person or persons, until the said information be finally “ tried and determined, and said injunction shall have the office and effect of an injunction in chancery.” At the return term a motion was made to quash the injunction so issued, which was overruled; and from that decision this appeal was prayed. The correctness of that decision alone is to be determined. With the merits of the information, or the validity of any portion of the act which *504 does not directly bear upon the question, we have nothing to do. I lay out of view, therefore, that portion of the argument which attacked the general features of the act; because, if it be. even true that certain other provisions are unconstitutional, it would not follow, for that reason, that the whole act was void. It is proper, in the outset, to determine whether this proceeding be, in its character, civil or criminal, because it is said that, in two of the cases, this was the governing principle. It is a proceeding taken from the English practice, where it is comparatively of modern invention, introduced to avoid the more tedious process of a quo warranto, and to get rid of the conclusive character of the judgment in that proceeding; In its origin it was regarded as a criminal prosecution, as it was filed in the King’s Bench by the attorney general, as well to punish the usurper as to oust him from the franchise; but more recently it has been used for the purpose of trying the civil right only, and when so used, it is regarded asa civil proceeding, the judgment extending to ouster only. Chancellor Kent informs us, that, although in form it is a criminal proceeding, yet it is, in its nature, a civil remedy, (2 Kent’s Com. 313, 5th ed.) ; and so it seems to be regarded by other approved authorities. Such was no doubt intended to be its character by the framers of the act of 1843, which inflicts no penalty, but looks to an ouster alone.
I come, then, to the more important question, the validity of that section of the act under which the injunction was granted. The grounds assumed in argument, in opposition to the act, were, first, that it impairs the obligation of the contract, by invading the implied or incidental powers of the corporation, and is therefore in violation of the constitution of the United States. 2. That it is a privation of the enjoyment of franchises expressly granted, and for that reason unconstitutional; and, 3. That it violates the constitution of Mississippi, by conferring judicial power on the clerks of the circuit courts.
First. Does it interfere with the implied or incidental powers of the corporation? It is undoubtedly true that the implied powers of a corporation are as much beyond the control of the *505 legislature, as are the powers expressly vested. Any law which materially alters or abridges either, so as to affect the right, impairs the grant; for both are alike granted. What are the implied powers of a corporation 1 They are those powers, and those only, which are necessary and proper to enable the corporation to fulfil the objects of its creation — those which are requisite to the perfect enjoyment of the powers expressly granted. Such powers are presumed to have been within the contemplation of the granting power; they result necessarily from the grant. It is contended, then, that the bank had a right to continue all its banking operations, úntil a judicial determination of forfeiture had been pronounced against it, and a dissolution declared, and that it was incident to it as a corporation, to enjoy its privileges up to that time. This position is untenable. It is not an incident to a corporation, that it shall exist as such up to the happening of a contingency. Such continuance is not requisite to its business capacity — not essential to the enjoyment of the powers granted. This is a question of duration, not of power. Power is an active, not a passive principle. Nothing but an express warrant will confer existence on a corporation for a given period. Its power may be as full and complete for a shorter time as for a longer one. At the time this charter was granted, the law undoubtedly was, that a judicial determination directly on the question of forfeiture must have preceded a dissolution of the corporation. This law, it is said, entered into the contract, and constituted as much a part of the charter as though it had been inserted. This position is not maintainable on principles applicable to grants of the description now under consideration. Besides, the doctrine that the law enters into the contract, and becomes a part of it, has not received unqualified judicial approbation. Judge Story, in reviewing the decisions on this subject, denies its correctness in unqualified terms, and shows its fallacy by reasoning and examples so striking, as to defy refutation. 3 Sto. Com. on the Const. 247, 248. I am aware that in the case of Bronson v. Kenzie, 1 How. S. C. Rep. 311, the supreme court of the United States has given countenance to a different doctrine. But let us test *506 this question of continuance by the application of principles. I have said it was not incident to the corporation that it should continue the exercise of its powers up to its dissolution by judgment. This was a privilege permitted to it as the law then stood, but it was by virtue of a general law. Those things which are incident, like those which are expressly granted, constitute a part of the being or vitality of the corporation, and we must distinguish between the privileges conferred by grant, and those which may be exercised in virtue of the general law of the land. In respect to the latter, the corporation stands on no higher ground than natural persons, as to whom all laws may be changed, so that the change does not impair vested rights; but all privileges are not rights. The state never parts with her supremacy, unless by an explicit act, indicative of a clear intention. Let us suppose the state contracting with this corporation. She grants certain powers, to be exercised for a certain time, on condition implied by law that the corporation shall forfeit the grant or the power by a violation of the conditions. The law imposes on the corporation the duty of strict conformity, and declares that a forfeiture shall be the consequence of a violation. When the state is thus providing against an abuse of confidence, can it be construed as an inviolable feature in her contract, that the corporation shall continue in that abuse? The state has not bound herself to indulge a corporation in malpractices until a forfeiture is judicially declared. She may do so if she will, but the indulgence is permissive, not obligatory. The violation destroys the right, and converts it into a mere privilege. There is a principle at the root of this question which will serve to explain it. A grantor, upon condition, may waive the forfeiture for a breach of the condition. The presumption of law is in favor of a waiver. The state grants upon condition, and, like any other grantor, may waive the breach, and the law raises the same presumption. In the case of a common grantor an entry is necessary to rebut the presumption of waiver, and this entry may be made at any time after forfeiture. So it is with the state; some act equivalent to an entry, to rebut the presumption of waiver, is necessary. That *507 act is usually a judgment, -which becomes the evidence that the state does not intend to waive. But as the common grantor is not bound to enter in any particular way, or at any particular time, so it is with the state; she may prescribe any other mode of evincing her determination. She has not bound herself by contract to pursue the remedy in any particular court, or by any particular course of proceeding; and, all other impediments out of the way, she may adopt her own course of proceeding, her own forum, and her own process; for I repeat, that, after the breach of condition, the corporation holds as a matter of favor.
Questions arising under that provision, in the constitution of the United States, which declares that no state shall pass any law impairing the obligation of contracts, have been much discussed in the supreme court of the United States, from an early period in the history of our government down to the present time. The principle admits of no dispute; but, in the nature of things, it is often difficult of application. Mr. Justice Story, in the 3d volume of his Commentaries, 250, gives us a summary of the principles settled by all the cases, from Fletcher v. Peck, 6 Cranch, down to Ogden v. Saunders, 12 Wheaton, from which it seems that any law which enlarges, abridges, or in any manner changes the intentions of the parties, resulting from the stipulations in the contract, necessarily impairs it. The manner or degree of the change áoes not influence the conclusion. Whether the law affects the validity, the duration, the construction, the discharge, or the evidence of the contract, it is the same thing. Any deviation from its terms, by postponing or accelerating the period of performance, which imposes conditions not expressed, or dispenses with those which are a part of it, however minute or immaterial, impairs its obligation. And although there is a distinction between the contract and the remedy, yet the remedies existing at the time the contract is made, which are all afterwards extinguished, so that no means of enforcing it remain, this impairs its obligation. But every change of remedy does not involve such a consequence. The legislature may vary the nature and extent of the remedy, so *508 that some substantive remedy be left. The legislature may also prescribe the time and the modes in which remedies may be pursued. The change here spoken of must reach the intention of the parties, resulting from the stipulations in the contract. Something contracted about must be changed. The charter must be looked to, for the purpose of measuring the extent of the contract, and if privileges claimed are not there to be found, they do not exist. Providence Bank v. Billings & Pitman, 4 Peters, 562. There is nothing in this bank charter which confers on the corporation the right to enjoy its franchises until dissolved by judgment, nor does such a power result necessarily from that which is granted. Hence, I conclude, the obligation of the contract has not been impaired by an interference with its implied powers.
Second. Has any express grant of power been violated, by the 6th section of the act 1 It is said the bank, by its charter, has the power to sue, and that it is deprived of this right by injunction. The act only declares that the bank shall not collect, not that it shall not sue. But suppose it to extend to suits, does it even then follow that it is unconstitutional 1 If the legal remedies be taken from the corporation, or seriously impaired, so as to affect the rights acquired by contract, then the act is void. But the truth of this proposition depends upon the correctness of the assumption, that an injunction destroys a right, which is a position that cannot be maintained on legal principles. An injunction may suspend a remedy, but it does not affect the right. An injunction is usually interposed to prevent a party from doing that which, in good faith, ought not to be done. In this respect, equity corrects the imperfections of the law, by interposing its power for the prevention of injustice. This branch of jurisprudence constitutes a part of the whole system, and to which all parties, corporations, and individuals are subject, and to claim exemption from it is to reject one part of the system, and hold on to the balance. It constituted a part of the system when this corporation was created, and all such .grants are made with a view to the whole system. If the corporation has a right to urge its legal right to sue, not *509 withstanding the equities which exist, it is a right which might be urged in one case as well as another. The injunction presupposes, that she ought not to be permitted to collect her claims ; and if it be well founded, then, of course, no right is impaired, and whether well or ill founded is a question which does not arise on this branch of the inquiry. The question now is, whether the act of the legislature, directing that an injunction should issue, impairs the obligation of the contract ? The act does not declare any new cause of forfeiture, but merely prescribes the injunction for causes which would work a forfeiture under preexisting laws. The grant of power to sue only conferred the power to do so where there was no legal or equitable impediment interposing. An injunction is the appropriate process in the administration of preventive justice, and may be resorted to for many purposes. 1 Madd. Ch. 126. Pending litigation, property may be thus, protected, which is in danger of being destroyed, if the powers of the court in which the controversy is going on, are inadequate for that purpose, and, to a limited extent, this is its effect in this case, or at least seems to have been an ingredient in the legislative mind. It may be that the facts will not warrant the injunction, or that there are other obstacles insurmountable ; but as a mere question of power in the legislature to prescribe it as a remedy, assuming that the causes of forfeiture had occurred, it is not an impairing of the obligation of the contract, within the meaning of the constitution. It does not violate any right granted by the charter; it merely postpones the remedy, on the supposition that the corporation has lost its right to sue, or ought not to exert it-; but it is a legal suspension, if warranted by the facts, and if not so warranted, the corporation may have a speedy remedy ; and if such remedy be denied, then it may be obnoxious to other objections raised from a different source, but it does not impair the violation of the contract, merely because it suspends the power to sue. These remarks apply to the corporation only; no other rights are brought to view.
The power of the legislature to interpose the process of injunction, seems to be well settled by authority, as has been *510 admitted in argument, but the correctness of the decisions is questioned. There is a statute in Massachusetts, very much like our own in all respects, except that the injunction seems to have been issued by a judge, and the remedy in chancery. The act authorized the bank commissioners to examine the banks, and if they should find them insolvent, or if they had violated their charters, on application by the commissioners to a judge of the supreme judicial court, he was authorized to issue an injunction restraining such corporation, in whole or in part, from further proceeding in its business, until a final hearing could be had. An injunction was obtained under this statute, and a motion made to dissolve it, on the ground of the unconstitutionality of the act. The supreme court of Massachusetts admitted the correctness of the doctrine, that the legislature cannot interfere with franchises granted, and after discussing the question at length, held that the injunction did not impair the obligation of the contract. That it was a mere legal suspension of the corporate power under the general law, which was as applicable to corporations as to individuals, and that the proceeding was valid. It was also objected in that case, as it is in this, that the bank had a right to exercise its power, until there was a judicial determination against it; but the objection was held to be without foundation. 21 Pick. 542.
There is also a similar statute in New York, which gives the chancellor the power to grant the injunction, and makes the case cognizable in chancery. The attorney general is authorized to petition the chancellor for an injunction against any bank which may be insolvent, or which has violated the provisions of its charter; or any creditor may petition, and upon sufficient proof, the court is authorized to grant the injunction, restraining such corporation from exercising its franchises, and from paying out, or collecting and receiving, any of its money, or transferring any of its property or securities, and the act also authorized the court to appoint a receiver. The constitutionality of this act was questioned before the supreme court of New York, in the case of the Bank of Columbia v. The Attor *511 ney General, 3 Wend. 588, but by Sutherland, Justice, it was decided to be constitutional. Chancellor Kent has noticed the provisions of these statutes, without in the least pretending to question their constitutionality. 2 Kent’s Com. 314. He considers them in the light of insolvent or bankrupt laws, applicable to corporations, and although our act cannot, with propriety, be denominated a bankrupt or insolvent law, because it is silent on the subject of insolvency, yet I apprehend this makes no difference, in respect to the power of the legislature. The 6th section gives the injunction, and it seems to have no other definite object, than as being ancillary to a remedy, which the state has thought proper to prescribe for herself; and although it. may seem to be a harsh one, it is not, for that reason, void. Similar decisions have been made in Maryland and New Jersey.
The case of The People v. The Manhattan Company, 9 Wend. 351, was cited as sustaining a different doctrine. That opinion was also delivered by Judge Sutherland, and it is consequently the more manifest that the case turned upon a different ground. The charter of the corporation contained an express provision that it might employ its surplus capital in the purchase of stock, or in any other moneyed operations or transactions. This clause was held to confer express authority to the bank, and on that ground to exempt the corporation from the operation of the subsequent restraining acts against illegal banking. Nor do 1 conceive that any of the cases cited for the bank come up to the question, or tend to shake the authority of the direct adjudications above referred to.
But it was insisted with great zeal that this is not a remedy, and for that reason the act is void, because the power of the legislature can only be exerted in prescribing a remedy. Its connection with the proceeding on the information seems to be remote, it is true, nor is it easily perceived how its object can be of a remedial character with reference to judgment of ouster, which is the only object the state, in reference to herself, can be supposed to have had in view. But with the object we have nothing to do. The state undoubtedly has a right to prescribe *512 a remedy if there be none. She has also a right to regulate the form of the remedy, and the time and manner in which it shall be pursued, so that in doing so the contract is not impaired. The adequacy or appropriateness of the remedy were questions for the legislature. This is not a remedy for the benefit of individuals; it is the remedy of the state, prescribed by herself and for herself. It is admitted that the legislature had a right to prescribe an adequate remedy, and when that is a remedy for the state they had a right to judge of its adequacy. An objection to its sufficiency does not come well from the corporation, so long as it steers clear of interference with granted powers. That the state has a right to restrain the action of a defaulting corporation has been shown. It is a right which belongs to her in her sovereign capacity. Every charter is granted by the exercise of the high functions of government, and contains a portion of the power of the government within it. Any abuse entitles the state to reclaim the power, and if no remedy existed at the time of making the grant it is competent for her to provide one. Other checks out of the way, it was competent to direct proceedings by bill, accompanied by an injunction to stay the proceedings of the corporation. By adopting the information, other ancillary remedies are not necessarily excluded. It was an implied condition in. the contract that the state might withdraw the franchise for a forfeiture. If it may be withdrawn, may the abuse not be checked until it is withdrawn! Most undoubtedly it may, and this proceeding is so far remedial at least, as to check the abuse of power. But it may be placed on higher ground. The state, being the only power that can control the abuse of authority by corporations, is bound to protect the public from the influences of these abuses, whenever they may occur. In this light it is perhaps a duty to suspend their action when they are charged with abuses. The preceding remarks apply exclusively to the constitutionality of the act under the constitution of the United States, and although it may not in any particular impair the obligation of the contract, it may still be an improper remedy, which point remains to be determined.
*513 Third. Does the act vest judicial power in the clerk of the circuit court, or was it an act of judicial power by the legislature? In either event it is repugnant to the constitution of the state.
The second article of the constitution divides the government into three distinct departments, legislative, judicial and executive ; the power pertaining to each to be exercised by a separate body of magistracy; and the second section declares that no person belonging to one department shall exercise any power properly belonging to another. The first section of the fourth article declares that the judicial power of the state shall be vested in one high court of errors and appeals, and such other courts of law and equity as are thereinafter provided for. The sixteenth section provides that a separate superior court of chancery shall be established with full jurisdiction in all matters of equity. Thus we see the powers of government first separated, and then parceled out and transferred, not held in abeyance, but actually vested by the constitution itself.
These provisions do not define judicial power, nor do they limit it; but such as it then was, it was vested. In order to determine what is judicial power then, we must look to the source of our jurisprudence, and consult the writers who have defined the limits of the various parts of our system. Our ancestors brought with them the laws of the parent country, which as a body continued unchanged up to the time of the revolution. That memorable event resulted in a change of government, but the system of law, so far as it was consistent with the principles of the new government, still prevailed, and formed the basis on which the jurisprudence of the several states was reared. All the state constitutions have been framed in view of, and with reference to, the common law, which must consequently often be resorted to in construing constitutions. This is particularly the case in regard to our constitution. Ascertained, then, by this test, it will result that all power rightfully exerted by the common law courts, is in its character judicial. All such power was vested by the constitution in the courts created by it; and it must also follow that any new *514 judicial power created by the legislature, will fall into the same channel. So soon as its character is fixed it has a place assigned it by the constitution, or if it cannot be exercised by any tribunal, it can have no practical existence.
The sixth section directs the clerk, on the filing of an information, to issue an injunction to restrain all collections by the bank, its assignees, officers or agents, or other persons; and it further provides that the injunction shall have the office and effect of an injunction in chancery, and that it shall continue in force until the information be finally tried. It is technically then an injunction to stay proceedings, not only in name but in effect, performing precisely the office of an injunction in chancery. By what kind of power then does an injunction issue under our system? To this question it seems to me there can be but one answer, and the elementary writers furnish it. Harrison, in his Chancery Practice, informs us that an injunction is a remedial writ, in the nature of a prohibition, to obtain which, the party’s right or injury, applying for the same must be certified to the court; and all injunctions are commonly obtained by order of the court upon motion, either upon matter confessed in the answer, or upon some matter of record, or some deed, writing or other evidence produced in court, whereby it appears there is some probability that the party ought to be discharged in equity. 2 Harrison’s Chancery, 220. Another elementary writer informs us that all injunctions are discretionary, and granted upon the circumstances of the case; and are prohibitory writs specially prayed for by the bill. 1 Haddock’s Chancery, 125. Indeed, an injunction under the English practice was always granted in open court, except in cases of great emergency, shown to be so by petition and affidavit, under which circumstances they were allowable in vacation, if the petition was accompanied by a certificate that the bill was filed. Jeremy, in his treatise on Equity Jurisdiction, 307, says that “ an injunction is a writ framed according to the circumstances of the case, commanding an act which this court regards as essential to justice, or restraining an act which it esteems contrary to equity and good conscience.” In the case of Roberts v. *515 Anderson, 2 Johns. Ch. R. 202, Chancellor Kent held that the granting of an injunction and continuing it, must always rest in the sound discretion of the court, to be governed by the nature of the case. Our statute, which existed at the time the constitution was formed, treats this power as judicial. H. & H. Dig. 512, 513, 514, 515. From these authorities it must be manifest, if it were necessary to cite authorities to prove it, that the granting of an injunction is a judicial act; and not only is it so, but it requires the exercise of the soundest judicial discretion, founded not on arbitrary notions of justice, or of right and wrong, but on a knowledge of the settled rules of equity. Can the exercise of this discretion be dispensed with ? If it can the exercise of judicial power becomes a mere ministerial act. This is a power which existed as judicial power when the constitution was formed, and as such it was disposed of, and cannot be withdrawn. No portion of jurisdiction was left undistributed. If it be really an injunction in chancery, it is comprehended in the words, “ full jurisdiction in all matters of equity.” The jurisdiction of the court of chancery is exclusive in all matters of equity. Blanton v. King, 2 How. 856; Carmichael v. Browder, 3 How. 252. This excludes the power of the circuit courts, for they have no power over injunctions except in certain specified cases. The .law defines rights and provides remedies, but it is for the judiciary to construe the law in its application to the objects of its provisions, and to enforce the remedy. It was said that an injunction is mere process which is always subject to the regulation of the legislature. An execution is also process; can the legislature award an execution without a judicial determination to support it? It cannot. A distinction must be observed between process which precedes judicial action, and that which follows it as a consequence. An injunction is of the latter description. Process to bring a party into court has never been regarded as requiring judicial action, and hence it is issued as a matter of course by the clerk. The subpoena in chancery brings the party into court; but the injunction performs a different office. It is in the nature of a judgment, and cdmmands what shall be done. *516 The law may declare oil what facts this judgment for an injunction may be given, but it is for the court to determine Whether the party applying brings himself within the rule of law. If I have succeeded in showing that judicial action is requisite in granting an injunction, and that it is that description of power which is within the meaning of the constitution, then beyond question this injunction violates the constitution, for it was granted either by the clerk, or by the legislature. If it is Sustained in this case, why is it not in every case in which the legislature may prescribe it 1 But the legislature also determined how -long the injunction should continue. This was Certainly an exercise of judicial power. It was doing all that the chancellor -could do in any case. And moreover, if this injunction was returnable ill chancery, it was tying the hands of th'e chancellor, by deciding in advance on its period of duration, notwithstanding any showing that might be made for its dissolution. If it was not returnable into chancery, it was the creation of a new jurisdiction, with a new rule of power. My opinion is, however, that this injunction was returnable nowhere, because no court had any power over it. If this be true it was unconstitutional, because it amounted to a legislative injunction.’
The provisions of the section of law under consideration ahow the necessity of such a discrimination as cannot ordinarily be expected of a clerk. The -proper direction of the injunction involves a construction of the statute which is by no means free from difficulty.. For instance, to what kind of claims does it extend ? Who are assignees within the meaning of the law, and to what officers and agents, and who are such ; and to whom does the statute refer by other person or persons 1 This construction of the act was left to the clerk, who is a ministerial officer. I conclude, then, that ’the act operates as a legislative mandate for an injunction, and that to some extent it confers judicial power on !the clerk.
I proceed to make a few remarks as applicable to the Commercial Bank of Rodney, which differs from the others only in •this, that prior to the passage of this act it had assigned all its *517 effects and securities -for the benefit of creditors. And the assignees moved to quash the injunction, -which motion the court overruled. The assignment having taken place before the act, and the bank having by it parted with all her interest, it is difficult to perceive on what ground the legislature could enjoin the assignees. To this, however, it is answered that the seventh section of the act of 1840, prohibits such assignments. I have before had occasion to express an opinion on this act, and I still think that a transfer of a note by a bank is not void, but voidable at the election of the maker. He may avoid it if he will, but that he may also waive the objection is, I think, equally clear. Suppose he should by promises or otherwise induce the assignment to a third person, this would amount to a waiver of any defence. The injunction is directed against assignees generally, and by its letter extends as well to assignments made before 1840 as after that time. In spirit it does not embrace such, nor can its provisions be extended to them. A chancellor, if applied to, would undoubtedly refuse an injunction as against, assignees who acquired title before 1840; and it is not equally necessary that the clerk should make this discrimination, the doing of which is the exercise of judicial discernment. But, further, the act of 1840 certainly does not embrace fairly a general assignment for the benefit of creditors; it is silent as to any property of the bank, prohibiting only the transfer of notes or evidences of debt, so that a general assignment, to some extent at least, would be valid, even made since that act. Note-holders are creditors, and entitled to the benefit of such assignment, if they desire to avail themselves of it. Here then is another legal question the clerk must solve before issuing the injunction. The difficulties that must arise in limiting the injunction so as to make it operate on those persons only who are legally embraced by the act, when they claim as assignees, are offered as additional proofs of the judicial character of the act to be performed, and for this purpose, in part, were my remarks extended to the case of the assignees of the Commercial Bank of Rodney.
*518 The embarrassment which I feel in being compelled, from the convictions of judgment, to declare that the legislature has, in any particular, transcended the limit of their authority, is, to some extent, diminished, though certainly not removed, by the reflection that this duty is performed in preventing the encroachment of one department of the government on another. The importance of keeping them separate, not only in theory but in action, is universally admitted to be a feature of government, essential to liberty. This subject was very fully discussed by Mr. Madison in some of the numbers of the Federalist, in which he not only shows and urges the importance of a practical separation, and the necessity of confining each department within its proper sphere of action, but he admonishes us that the tendency of the legislative department is to concentrate power to itself; a tendency, which he said could only be counteracted “ by so contriving the interior structure of the government, as that its several constituent parts may, by their mutual relations, be the means of keeping each other in their proper places.” He calls the legislature the more powerful member of the government; and if it be so, its encroachments should be the more zealously watched. Mr. Jefferson has also said that “ all the powers of the government, legislative, executive, and judiciary, result to the legislative body. The concentration of these in the same hands is precisely the definition of a despotic government.” I mean not to impute to the legislature any intentional departure from the orbit of its power in this instance. The conflicting opinions of this court on the points involved, are a sufficient vindication of the rectitude with which the legislature acted. I quote from the two great statesmen mentioned, for the purpose of showing more clearly my own duty in relation to the constitutional principle involved.
The cases of the State v. The Grand Gulf Bank, and The State v. The Bank of Port Gibson, depend upon the same general principles. There is a difference in their attitude, however; by the judgment of the circuit court the informations were improperly quashed.
In my opinion, then, in the case of the Commercial Bank of *519 Manchester, the injunction ought to have been quashed, and that the same order ought to have been made in the case of the Commercial Bank of Rodney, and this I think should be the judgment of this court. But in the other cases, it was error to quash the informations for which the judgments ought to be reversed, and the causes remanded.